**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 15, 2001**

DAVID A. JAMES,

    Plaintiff-Appellee,

v                                                     No. 114454

ROY ALBERTS,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

At issue is whether the volunteer doctrine bars plaintiff David James's premises liability action for injuries incurred while he assisted defendant Roy Alberts in digging a trench. The trial court granted summary disposition to Alberts on the basis of the volunteer doctrine, which generally states that the only duty owed to a volunteer is to refrain from injuring him by a wilful or wanton act. The Court of Appeals reversed because of binding Court of Appeals authority indicating that the volunteer doctrine is limited to respondeat superior

liability.  We affirm the Court of Appeals decision, albeit for different reasons and in so doing abolish the volunteer doctrine.

<u>Facts and Proceedings</u>

On November 27, 1992, James assisted Alberts in digging a trench from Alberts's house to his pole barn to put in conduit for electricity.  According to James, the trench was about 40 feet long, 10 inches wide and 18 inches deep.  James fell as he stepped out of the trench and broke his left arm.  He testified that just before he fell, he felt like he could not lift his left foot.  Alberts told James that he tripped over a partially buried cable.  However, James did not see a cable.

The parties disagreed regarding whether Alberts invited James to assist him in digging the trench.  Alberts testified that he did not think he called James shortly before he planned to dig the trench; rather, James just happened to stop by and helped.  In contrast, James testified that Alberts called him the night before the incident, seeking help in digging the trench.

James sued Alberts for his injuries.  The trial court granted summary disposition for Alberts on the basis of the volunteer doctrine.  It concluded that James was a volunteer and that, under the volunteer doctrine, Alberts was not

2

subject to liability for his injuries unless he caused them by a wilful and wanton act, which was not demonstrated here. The Court of Appeals reversed. 234 Mich App 417; 594 NW2d 848 (1999). It reversed because MCR 7.215(H)(1) required it to follow *Ryder Truck Rental v Urbane*, 228 Mich App 519; 579 NW2d 425 (1998), which held that the volunteer doctrine was limited to respondeat superior liability. (The *James* panel stated that it believed that *Ryder* was wrongly decided.) The judges of the Court of Appeals were polled and a majority declined to convene a special panel. 234 Mich App 801; 600 NW2d 704 (1999). This Court granted leave to appeal. 461 Mich 1009 (2000).

The Volunteer Doctrine

The applicability of a legal doctrine is a question of law. This Court reviews questions of law de novo. See *Page v Klein Tools, Inc*, 461 Mich 703, 709; 610 NW2d 900 (2000).

We begin by noting two basic legal principles that generally guide negligence actions. First, if a person is injured by the direct negligence of another, whom he is attempting to assist, the latter's duty generally turns on foreseeability. See *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977) ("The questions of duty and proximate cause . . . both depend in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm

to the victim, and whether the result of that conduct and intervening causes were foreseeable.") Second, if a person assisting another's servant is injured by the servant and tries to sue the servant's master, the master's liability turns on agency principles. Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority. *Shinabarger v Phillips*, 370 Mich 135, 141; 121 NW2d 693 (1963); *Central Wholesale Co v Sefa*, 351 Mich 17, 25; 87 NW2d 94 (1957). This agency law concept, which could operate uneventfully, for example, in contracts, was not without its problems historically in torts. One problem was how to harmonize agency law with what was known as the fellow-servant rule in torts.

The fellow-servant rule generally barred an action against an employer for injuries resulting from a fellow servant's negligence. See *Felgner v Anderson*, 375 Mich 23, 32; 133 NW2d 136 (1965). Under this rule, if A had two employees, B and C, and B negligently injured C while operating within the scope of the authority given by A, C could not sue A. However, if C was not a fellow servant to B, but rather a volunteer assisting B, the fellow-servant rule did not apply and C could, if agency law held sway, sue A. Thus, in these two situations, similar except for the employee or volunteer status of C, different results would obtain.

4

Said more theoretically, in the first hypothetical example, agency principles would be displaced by the fellow-servant rule, but in the second example, agency principles would control the outcome. Not surprisingly, courts faced with a case in which a fellow servant was without remedy were loath to give an otherwise similarly situated volunteer a better outcome. Thus a doctrine emerged, described as the volunteer doctrine, to place the volunteer under disabilities similar to those faced by the fellow servant. This can be seen in Michigan[1] in *Johnson v E C Clark Motor Co,* 173 Mich 277, 286; 139 NW 30 (1912).

In *Johnson*, the plaintiff was injured while working with the defendant's employee to test a motor that the plaintiff was to purchase for his company. The Court held that the injured person, were he a mere volunteer not working for his own (or his employer's) interests, would be barred from recovery by the volunteer doctrine, even as he would have been barred by the fellow-servant rule if he had been a fellow servant. At 286, the Court stated the rule:

> "One who, having no interest in the work, voluntarily assists the servant of another, cannot recover from the master for an injury caused by the

---

[1]For discussion of the volunteer doctrine in other states, see *Kelly v Tyra*, 103 Minn 176; 114 NW 750 (1908); *Kentucky Lumber Co v Nicholson*, 157 Ky 812; 164 SW 84 (1914); *Callaham v Carlson*, 85 Ga App 4; 67 SE2d 726 (1951); *Poulson v Poulson*, 1 Ill App 2d 201; 117 NE2d 310 (1954).

negligence or misconduct of such servant, since he can impose no greater duty on the master than a hired servant."

With the introduction of worker's compensation law in 1912, and the corresponding demise of the fellow-servant rule, the reasons for the volunteer doctrine had largely vanished. There remained no reason to legally disable volunteers because fellow servants were no longer without legal redress. This Court noted this in *Diefenbach v Great Atlantic & Pacific Tea Co*, 280 Mich 507, 512; 273 NW 783 (1937), where it held that this rationale for the doctrine

> is rendered somewhat doubtful due to the provisions of the various workmen's compensation acts declaring that the negligence of a fellow servant shall be no defense to an action against the employer for injuries sustained in the course of the employment.

The *Diefenbach* Court correctly concluded that the fellow-servant rule, which created the need for the volunteer doctrine, was no longer part of our law. This should have set the stage for the abolition of the volunteer doctrine. However, instead, the *Diefenbach* Court opted to retain the doctrine, stating at 512:

> The better view would appear to be that the volunteer cannot recover because no duty is owed to him other than not to injure him by wilful and wanton acts.

Little analysis was provided for this new rationale, which arguably extended the doctrine to the context of direct

6

liability.  We note that it was unnecessary to resort to the volunteer doctrine in order to reach the conclusion that the plaintiff was not entitled to recovery from the store as traditional agency principles would have led to the identical result.[2]  All of which is to say that we believe it would have been better for the *Diefenbach* Court to opine, as Justice Talbot Smith did sometime later with respect to another antiquated rule:

> The reasons for the old rule no longer obtaining, the rule falls with it.  [*Montgomery v Stephan*, 359 Mich 33, 49; 101 NW2d 277 (1960).][3]

That we do today.

We return this area of the law to traditional agency and tort principles, comfortable that they will better resolve the matters to which the doctrine might have applied.  Accordingly, we agree, but for different reasons, with the

---

[2]In *Diefenbach*, the plaintiff entered a grocery store, voluntarily involved himself in the pursuit of a rat, and was injured when one of the store clerks, intending to strike the rat, stabbed the plaintiff's foot with a fish knife.  There is no indication that the store's agents had actual or apparent authority to allow the plaintiff to participate in the rat chase.  This would have been fatal to the plaintiff's claim against the store.

[3]The *Diefenbach* Court's retention of the volunteer doctrine created much confusion about the scope of the doctrine in the years that followed.  Indeed, this can be seen in our Court of Appeals efforts to grapple with the rule in, e.g., *Ryder*, *supra*, in which the majority concluded that the volunteer doctrine was limited to respondeat superior liability, but the concurring opinion concluded that it also applies in the context of direct liability.

7

Court of Appeals that this doctrine does not bar plaintiff's claim here, and affirm its reversal of the trial court's grant of summary disposition for Alberts.

### Premises Liability Law

In order to provide guidance on remand, we note that the present case is a premises liability action. James' claim is that he was injured by a condition of the land. The alleged injury occurred while he and Alberts were digging the trench; however, James contends that it arose out of a condition of the land, not out of the activity itself. In his complaint, James alleges that Alberts breached his duties as a landowner.

This Court recently set forth the duty of a landowner with respect to conditions on his land in *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000):

> Historically, Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee. Michigan has not abandoned these common-law classifications. Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises. Thus, a landowner's duty to a visitor depends on that visitor's status.

> A "trespasser" is a person who enters upon another's land, without the landowner's consent. The landowner owes no duty to the trespasser except to refrain from injuring him by "wilful and wanton" misconduct.

> A "licensee" is a person who is privileged to enter the land of another by virtue of the

8

possessor's consent.  A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved.  The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit.  Typically, social guests are licensees who assume the ordinary risks associated with their visit.

The final category is invitees.  An "invitee" is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception."  The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.  Thus, an invitee is entitled to the highest level of protection under premises liability law.  [Citations omitted.]

Under *Stitt*, Alberts' duty, as a landowner, turns on James' status at the time of the injuries.  Once James' status as a trespasser, licensee, or invitee is established, the next questions are whether Alberts breached the attendant duty and whether any such breach proximately caused the injuries at issue.  See, e.g., *Bertrand v Alan Ford, Inc*, 449 Mich 606, 613; 537 NW2d 185 (1995), citing *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).  We remand this matter to the trial court for further proceedings to resolve these questions.

## Conclusion

We affirm the conclusion of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.