# STATE OF MICHIGAN

# COURT OF APPEALS

KAL AUDI, Personal Representative of the
ESTATE OF KARIM F. AUDI,

Plaintiff-Appellant,

v

A. J. ESTAY, LLC, d/b/a REST-ALL-INN, a/k/a
REST-ALL INN OF OSCODA,

Defendant-Appellee.

UNPUBLISHED
December 3, 2015

No. 321418
Iosco Circuit Court
LC No. 13-007611-NO

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Plaintiff Kaul Audi, as personal representative of the estate of his minor son Karim F. Audi, appeals by right a circuit court judgment of no cause of action on his negligence claim and dismissing his nuisance and premises liability claims. The circuit court entered the order after it granted defendant's motion for summary disposition as to the nuisance and premises liability claims and after a jury returned a no-cause of action verdict on the negligence claim. For the reasons set forth in this opinion, we affirm.

## A. FACTS AND PROCEDURAL HISTORY

This case arises from 32-month-old Karim's drowning in the indoor enclosed swimming pool at defendant Rest-All Inn of Oscoda on August 25, 2012, during a weekend get together involving approximately 35 relatives of Karim's mother, Laura. At approximately 6:00 p.m. that day, plaintiff and other family members gathered and prepared food in the recreation area just outside the pool area. The hotel's surveillance video showed that Karim entered the pool area several times after 6:00 p.m. through an emergency exit door that had been propped open with a cement block. The video showed that a number of adults and children repeatedly passed between the recreation area and the pool area through the propped-open door and several people were in the pool. Laura's cousin, Zeina Bazzi, was inside the pool area at the shallow end of the pool watching another child. Karim interacted with Zeina before he went to play with other children on the pool steps in the shallow end of the pool. Karim played on the steps for several minutes before he entered the water. Shortly after he entered the water, Karim became submerged and did not resurface. Approximately five to eight seconds after Karim went under the water, Laura entered the pool area looking for Karim. Laura briefly stood at the side of the

-1-

pool before leaving the pool area and yelling to plaintiff that she could not find Karim. Plaintiff and a number of others then entered the pool area in search of Karim. A relative, Hayssam Bazzi, pulled Karim from the shallow end of the pool approximately three minutes after he went under the water. Hayssam performed CPR on Karim until first responders arrived, however, Karim died on August 31, 2012.

Plaintiff commenced this wrongful death suit on April 11, 2013, alleging *inter alia*, ordinary negligence, premises liability, and nuisance. With respect to each count, plaintiff alleged that defendant had a duty to comply with 1978 PA 368 and the administrative rules promulgated thereunder because defendant was the owner and operator of a public swimming pool. Plaintiff alleged that Karim was able to enter the pool area because defendant allowed an emergency exit door leading from the pool area to the outside recreation area to be propped open with a concrete block, that Karim's rescue was hindered because defendant allowed the pool water to become cloudy and that both actions violated Michigan's statutes, rules, and regulations. Plaintiff further alleged that defendant's breach of its duties was a proximate cause of Karim's injuries.

Defendant moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (10) (no genuine issue of material fact). The trial court granted summary disposition with respect to plaintiff's nuisance and premises liability claims and the case proceeded to a jury trial on an ordinary negligence theory. The jury found that defendant was negligent, but that the negligence was not a proximate cause of Karim's death. The trial court entered a judgment in favor of defendant and plaintiff appeals by right.

## B. ANALYSIS

## I. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition with respect to plaintiff's public nuisance and premises liability claims.

We review de novo the grant or denial of a motion for summary disposition. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Because the trial court appears to have considered evidence outside the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). When ruling on a motion brought under MCR 2.116(C)(10), the trial court must consider the affidavits, pleadings, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Reed v Breton*, 475 Mich 531, 537; 718 NW2d 770 (2006). The moving party is entitled to judgment as a matter of law if the proffered evidence fails to establish a genuine issue of any material fact. *Id.*

Plaintiff contends that he alleged distinct claims of negligence, premises liability, and public nuisance, that there was a genuine issue of material fact with respect to all three claims, and that the trial court erred in dismissing the premises liability and nuisance claims.

With respect to the premises liability claim, "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). An ordinary negligence claim is based on the underlying premise that a person has a duty to conform his conduct to an applicable standard of care when undertaking an activity. *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). In contrast, "[i]n a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land." *Id*. An owner "owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land," *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). Thus, "[w]hen an injury develops from a condition of the land, rather than emanating from an activity or conduct that created the condition on the property, the action sounds in premises liability." *Woodman v Kera, LLC*, 280 Mich App 125, 153, 760 NW2d 641 (2008), aff'd 486 Mich 228 (2010), citing *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001).

In this case, we note that courts are not bound by the labels parties attach to their claims. *Buhalis*, 296 Mich App at 691. Rather, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

Reading plaintiff's complaint as a whole, it is apparent that the gravamen of plaintiff's claim sounded in ordinary negligence. Boiled down to its essence, plaintiff alleged that defendant failed to abate the conditions that allegedly caused Karim's death. Plaintiff alleged that defendant allowed the condition of the pool water to become cloudy and murky at the time that Karim's family was using the pool and allowed the door to remain propped open. Because there was no evidence that the water was cloudy before it was used or that the door was propped open before Karim and his family entered the area, plaintiff essentially claimed that defendant failed to abate these conditions when they arose while Karim was in and around the swimming pool. Specifically, plaintiff alleged that defendant maintained the pool in a negligent manner by failing to adhere to DEQ guidelines, that defendant allowed the door to the area to remain propped open at the time that Karim drowned, and that defendant's staff failed to properly monitor the security cameras at the front desk. Plaintiff alleged that defendant had a duty to adequately monitor the pool area and the service door and that defendant undertook to monitor the areas with three security cameras and a live feed to the front desk, yet failed to adequately monitor the areas when it allowed the door to remain propped open and allowed the pool to be used even though it was not in compliance with DEQ standards. Plaintiff alleged that defendant's failure to abate these conditions in a timely manner was a proximate cause of Karim's death. Thus, the injury was alleged to have occurred because of defendant's actions or failure to act as opposed to arising from a condition on the land and plaintiff's claim therefore sounded in negligence. *Woodman*, 280 Mich App at 153; *James*, 464 Mich at 18-19.

We next specifically address plaintiff's claim that the allegedly cloudy pool water was a dangerous condition on defendant's premises and therefore the trial court should not have dismissed his premises liability claim.[1]

In a premises liability action, a plaintiff must prove the elements of negligence: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc.*, 270 Mich.App 437, 440; 715 NW2d 335 (2006). Thus, the only difference between a negligence and a premises liability claim is the duty involved. "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (footnote omitted).

In this case, the trial court instructed the jury on the elements of negligence and provided the following instruction with respect to defendant's duty as a business:

It was the duty of defendant in connection with this occurrence to use ordinary care for the safety of the plaintiff. The law recognizes that children act upon childish instincts and impulses. If you find the defendant knew or should have known that a child or children were or were likely to be in the vicinity, then the defendant is required to exercise greater vigilance, and this is a circumstance to be considered by you in determining whether reasonable care was used by the defendant.

Again, the gravamen of plaintiff's complaint relative to the pool water was that the defendant failed to maintain the water in accordance with DEQ guidelines. This is a condition which arose as a result of defendant's failure to properly maintain the pool rather than from a condition of the premises. *Woodman*, 280 Mich App at 153; *James*, 464 Mich at 18-19. Indeed, at trial, plaintiff argued that defendant's negligence allowed an unsafe condition to develop on the premises that proximately caused Kamir's death. Plaintiff argued that defendant was negligent in allowing the pool water to become cloudy and that the cloudy water was a proximate cause of Kamir's death. While the jury found defendant as negligent, it also found that the defendant's negligence was not the proximate cause of the minor's death. Given that the jury found that the result of defendant's negligence—i.e. the cloudy water—was not a proximate cause of Kamir's injury, it necessarily follows that a failure to warn about the same water would have resulted in the same verdict. Hence even if we were to find that plaintiff had pled a claim of premises liability, that alternative liability theory turned on the same issue—i.e. was the cloudy water a proximate cause of Kamir's injury. The jury found that it was not. Given that the jury determined the cloudy water was not a proximate cause of Kamir's drowning, it is axiomatic that the jury would have found that a failure to warn of that water was not a proximate cause of the drowning. Hence, because plaintiff's claim regarding the condition of the pool sounded in

---

[1] On appeal plaintiff restricts her premises liability argument to the condition of the pool water whereas in her complaint and during trial she also argued that a claim of premises liability based on a door propped open. We therefore confine our analysis to those claims brought on appeal.

ordinary negligence rather than in premises liability and the jury's determination that defendant's negligence was not a proximate cause of the minor's death, plaintiff's argument on this issue does not warrant remand for a new trial on a premises liability theory.

Plaintiff additionally argues that they alleged a valid public nuisance claim that should have been submitted to the jury.

"A public nuisance is an unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995). Conduct constitutes "unreasonable interference" if it: "(1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Id*. "A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public." *Id*.

On appeal, plaintiff argues that the cloudy water amounted to a public nuisance. Plaintiff alleged that the cloudy water presented a danger of preventing someone from observing a person drowning in the pool. However, plaintiff fails to articulate how the alleged harm in this case differed from the harm allegedly posed to the general public. Rather, plaintiff alleged that the pool water presented a common danger to the public in general as opposed to alleging that Kamir suffered an injury different from that of the general public. *Id*. Therefore, summary disposition of the public nuisance claim was appropriate. *Id*. Moreover, even assuming plaintiff alleged a viable public nuisance claim, as discussed above, given that the jury determined that defendant's negligence—i.e. the cloudy water—was not a proximate cause of Kamir's drowning, it follows that the alleged nuisance—i.e. the cloudy water—also was not a proximate cause of the drowning. Accordingly, plaintiff has failed to articulate grounds on which this case should be remanded for a new trial on a public nuisance theory.

## II. EVIDENTIARY ERROR

Next, plaintiff challenges two of the trial court's evidentiary rulings during trial. "The decision to admit evidence is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion." *KBD & Assoc, Inc v Great Lakes Foam Tech, Inc,* 295 Mich App 666, 676; 816 NW2d 464 (2012). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Preliminary issues including whether evidence is admissible under the rules of evidence involve questions of law that we review de novo. *Donkers v Kovach*, 277 Mich App 366, 369; 745 NW2d 154 (2007).

At trial, the trial court admitted the full recording of the surveillance camera video of the pool area (DX-58). The trial court also admitted an edited version of the video prepared by defendant (DX-59). The edited version contained portions of the recording that defendant wanted to highlight for the jury. Plaintiff's counsel objected, arguing that the video was "modified." After determining that the surveillance recordings were produced during discovery, the trial court admitted both versions into evidence without any explanation. On appeal, plaintiff argues that the manner in which defendant "compressed, chopped, and altered [DX-59] misled

the jury." Plaintiff argues that the video "does not present the whole picture," and made it difficult to track a person's movements and tell what time the events were occurring. Plaintiff argues that the trial court should have excluded DX-59 under MRE 403 because the video "caused a danger of confusion, misleading the jury, and was a waste of time."

MRE 403 provides in pertinent part that relevant evidence "may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time. . . ." In this case, plaintiff has failed to show that the trial court abused its discretion when it admitted the condensed video. Plaintiff's counsel had the opportunity on redirect examination to question plaintiff about any alleged inconsistencies between the full-length video and the condensed video. Plaintiff did not identify any inconsistencies. Moreover, both the full-length and condensed versions of the video were admitted into evidence and provided to the jury. Thus, the jury was free to consider both videos and weigh any alleged inconsistencies. In short, plaintiff has failed to demonstrate that the trial court's decision to admit the condensed video fell outside the range of reasonable and principle outcomes. *Maldonado*, 476 Mich at 388. Therefore, plaintiff is not entitled to relief on this issue.

Next, plaintiff argues that the trial court abused its discretion by limiting the expert testimony of Paul Sisson and Gerald Dworkin. However, defendant moved to strike the expert testimony of Dworkin and Jeff Beck for failure to timely supplement answers to interrogatories pursuant to MCR 2.313(B)(2)(b). Additionally, the citations to the lower court record in plaintiff's brief pertain to Beck and not to Sisson. Accordingly, we assume that on appeal, plaintiff intended to refer to Dworkin and Beck.

Under the Michigan Court Rules, "A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." MCR 2.302(B)(4)(a)(i). "[T]he purposes of pretrial discovery regarding experts to be used as witnesses at trial [are] narrowing the issues, preparation of cross-examination[,] and the elimination of surprise at trial . . . ." *Nelson Drainage Dist v Bay*, 188 Mich App 501, 506-507; 470 NW2d 449 (1991). Pursuant to MCR 2.302(E)(1)(a)(ii), a party has "a duty seasonably to supplement" his or her responses to discovery requests to include the substance of the expert's testimony. The court may, in its discretion, sanction a party under MCR 2.313(B)(2) for failing to reveal the substance of the expert's testimony in a timely fashion including limiting the party from "introducing designated matters into evidence . . . ." *Dorman v Clinton Twp*, 269 Mich App 638, 655-656; 714 NW2d 350 (2006) (citations omitted). In determining whether the barring of a witness is an appropriate sanction, the court should consider "whether the violation was wilful or accidental; the party's history of refusing to comply with discovery requests or disclosure of witnesses; the prejudice to the party; the actual notice to the opposite party of the witness; and the attempt to make a timely cure." *Id*. (internal quotation marks and citations omitted).

Defendant submitted supplemental interrogatories regarding expert witnesses to plaintiff on September 17, 2013. Plaintiff answered the interrogatories on December 11, 2013, after the close of discovery. Defendant moved to strike the expert testimony of Dworkin and Beck on the

ground that plaintiff's answers did not provide the experts' opinions and conclusions as requested. In response, plaintiff asserted that its answers provided that each expert would testify about "what the Defendant did wrong that caused decedent's death and what the Defendant should have done which would have prevented the decedent's drowning."

Plaintiff's counsel conceded at trial that the written interrogatory answers did not provide any further detail regarding Beck's opinion and conclusions. The trial court did not prevent Beck from testifying, but ruled that it would not allow Beck to offer an opinion more specific than what had been provided in the interrogatory answers. The trial court allowed Beck to testify that in his expert opinion defendant had a duty to keep the emergency exit door closed and violated that duty. Plaintiff now argues that Beck would have additionally offered evidence of negligence if his testimony had not been limited by the trial court.

The next day, plaintiff's counsel inquired about whether Dworkin, a witness located in Maine, would be allowed to offer an expert opinion that was not revealed in the interrogatory answers. The trial court replied, "I don't think there has been anything close to compliance with the court rules regarding discovery, and the answers that were provided . . . provide no idea of what his opinion might be. So I don't know how he would be able to testify, unless there is some specific exception to that." Plaintiff did not make an offer of proof and chose not to call Dworkin to testify.

Plaintiff concedes that limiting the testimony of an expert witness for failure to supplement responses to interrogatories requesting explication of an expert witness's expected testimony is a permissible sanction under MCR 2.313. Plaintiff contends, however, that the trial court abused its discretion in choosing this sanction because defendant could have deposed Beck and Dworkin, and defendant failed to show that plaintiff willfully failed to disclose the experts' opinions.

Plaintiff's supplemental interrogatory responses indicated only that the experts would testify that defendant did something wrong that caused Karim's drowning and defendant should have done something to prevent the drowning. Plaintiff's answers failed to provide any specificity with respect to the experts' proposed testimony and did not state any facts to articulate the substance on which Beck or Dworkin were expected to testify. In addition, plaintiff's responses were submitted after discovery closed.[2]

The trial court did not bar Beck's testimony, however, and indicated that it was limiting Beck's testimony to what had been set forth in the supplemental interrogatory responses as

_____

[2] To the extent that plaintiff contends that defendant could have taken Beck's and Dworkin's deposition to discover their anticipated testimony, that discovery option does not excuse plaintiff from complying with its obligation to provide appropriate responses to defendant's interrogatories under MCR 2.302(B)(4)(a)(i), or with its duty to supplement responses under MCR 2.302(E) in a timely manner.

permitted by MCR 2.313. Nonetheless, the court ultimately allowed Beck to offer his expert opinion that defendant violated its duty to keep the emergency exit door closed. Plaintiff argues that Beck would have offered additional testimony concerning evidence of negligence if his testimony had not been limited. However, plaintiff does not specify how the additional testimony would have shown that defendant's negligence was a proximate cause of Kamir's death. The court's measured response to plaintiff's discovery violation was not an abuse of discretion. *Maldonado*, 476 Mich at 388.

Similarly, the trial court indicated that Dworkin's testimony would be limited to what had been set forth in the supplemental interrogatory answers, but plaintiff chose not to call Dworkin and did not make an offer of proof. Plaintiff merely argues on appeal that Dworkin would have testified regarding aquatics and pools generally, and provided an "additional area of consideration for the jury to consider was [sic] is or is not a proximate cause in drowning." Plaintiff does not identify what the substance of Dworkin's testimony would have been. Further, Sisson provided expert testimony with respect to swimming pool safety, and plaintiff has failed to explain how "additional" testimony regarding pool safety was necessary to support its claims.

In short, plaintiff has failed to demonstrate that the trial court's decision to limit the expert testimony of Beck and Dworkin was outside the range of reasonable and principles outcomes. *Maldonado*, 476 Mich at 388.

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering