# STATE OF MICHIGAN

# COURT OF APPEALS

PEGGY FREEMAN,

       Plaintiff-Appellant,

v

KMART CORPORATION,

       Defendant-Appellee,

and

KMART HOLDING CORPORATION and
SEARS HOLDINGS MANAGEMENT,

       Defendants.

UNPUBLISHED
June 6, 2017

No. 331224
Genesee Circuit Court
LC No. 15-104384-NO

Before: RIORDAN, P.J., and KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Peggy Freeman, appeals as of right the trial court order granting summary disposition in favor of defendant, Kmart Corporation, in this premises liability case.[1] We affirm.

## I. FACTUAL BACKGROUND

On December 7, 2014, plaintiff was shopping with her daughter at the now-closed Kmart store that was located on Miller Road in Flint, Michigan. Plaintiff had visited that store numerous times in the past. The store was scheduled to shutter permanently the following day, and staff had stopped restocking the aisles approximately one month before the incident, so limited merchandise was on the shelves.

---

[1] Defendants Kmart Holding Corporation and Sears Holdings Management were initially named as defendants in plaintiff's complaint. The trial court entered a stipulated order of dismissal, which dismissed Kmart Holding Corporation and Sears Holdings Management without prejudice. Accordingly, we will refer to defendant Kmart Corporation as "defendant" in this opinion.

-1-

When they arrived, plaintiff and her daughter shopped in the back of the store for approximately 20 minutes. Plaintiff then separated from her daughter and walked by herself toward the front of the store. She was not pushing a shopping cart. She walked down an aisle without any merchandise on the shelves,[2] turned to the left at the end of the aisle, and immediately fell across an empty end cap[3] base, so that she was lying on top of the end cap after she fell. She then rolled off the end cap. Plaintiff's daughter and store personnel came to her aid soon after she fell, calling 911. Plaintiff sustained several injuries that required extensive medical treatment and continued to affect her daily life.

At her deposition, plaintiff explained that she was not sure of the exact cause of her fall, as she only remembered walking down the aisle and suddenly falling. She testified that she was "probably . . . looking straight ahead" when she fell, and she did not remember her foot catching on anything before the incident. Later in her deposition, however, she said that she thought she had fallen over the end cap and then rolled off of it. At least one store employee saw plaintiff fall on top of the end cap and roll onto the ground. It is undisputed that defendant did not place a barricade or warning near the empty end cap, and that nothing blocked it.

In March 2015, plaintiff filed a two-count complaint against defendant, alleging premises liability and ordinary negligence. Her claims were primarily based on Kmart's failure to remove the end cap when it was empty, failure to warn customers of the dangerous condition, failure to ensure a contrast in color between the store floor and the base of the end cap, failure to inspect the premises, and "fail[ure] to restock merchandise on the empty end cap and/or . . . fail[ure] to place a tall object around the edges of the empty end cap base to warn customers of the tripping hazard after the end cap became empty." In its answer, defendant denied plaintiff's allegations of premises liability and negligence.

In October 2015, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that it was entitled to judgment as a matter of law on several grounds, including the open and obvious doctrine. In her response, plaintiff argued that there were numerous issues of fact that precluded summary disposition. After holding a hearing on defendant's motion, the trial court granted defendant's motion for summary disposition based on the open and obvious doctrine and entered an order dismissing plaintiff's complaint with prejudice.

On appeal, plaintiff argues that the trial court's grant of summary disposition was improper. We disagree.

## II. STANDARD OF REVIEW

---

[2] A paper sign with the phrase "Entire Store 90% OFF" was hanging off the top shelf at the end of the aisle.

[3] An "end cap" is "part of the counter." A "counter" is the shelving unit that holds merchandise on either side of an aisle.

This Court reviews *de novo* a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). When reviewing such a motion, this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes" when ruling on a motion for summary disposition pursuant to MCR 2.116(C)(10). *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 91; ___ NW2d ___ (2016) (quotation marks and citation omitted). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. ANALYSIS

"A plaintiff who brings a premises liability action must show (1) the defendant owed [her] a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of [her] injury, and (4) [she] suffered damages." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014) (quotation marks and citation omitted). The parties agree that plaintiff was an invitee on defendant's premises when she fell. "In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises . . . ." *Hoffner v Lanctoe*, 492 Mich 450, 455; 821 NW2d 88 (2012). See also *id*. at 460; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner*, 492 Mich at 460. See also *Lowrey v LMPS & LMPH, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016), quoting *Hoffner*, 492 Mich at 460.

However, "[t]he possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich at 460-461 (quotation marks and citations omitted). See also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 94; 485 NW2d 676 (1992) ("[A] possessor of land does not owe a duty to protect his invitees . . . [from] dangers that are so obvious and apparent that an invitee may be expected to discover them himself."). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Hoffner*, 492 Mich at 461 (quotation marks and citations omitted).

-3-

"[B]ut, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich at 517. See also *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995) (stating that when there is something unusual about an open and obvious condition due to its "character, location, or surrounding conditions, then the duty of the possessor of land to exercise reasonable care remains. If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide.") (quotation marks and citations omitted). "Under [the] limited ['special aspects'] exception [to the open and obvious doctrine], liability may be imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.' " *Hoffner*, 492 Mich at 462 (citation omitted). As the Michigan Supreme Court explained in *Hoffner*, 492 Mich at 463:

> This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*. *In either circumstance*, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. [Quotation marks and citations omitted.]

As the trial court concluded, the record clearly demonstrates that there was no genuine issue of material fact as to whether the end cap base was open and obvious. It is apparent that an average person with ordinary intelligence would have discovered the end cap base upon casual inspection. *Hoffner*, 492 Mich at 461. All of the witnesses, including plaintiff, agreed that the end cap was a different color than the floor: the end cap base was brown, while the floor was a sand, white, or off-white color. It also was rather large, standing nine inches high, 36 inches wide, and 26 inches deep. Consistent with the witnesses' descriptions, the black-and-white photograph of the end cap base attached to defendant's motion for summary disposition and plaintiff's response depicts a large, dark-colored base, raised from the floor by a dark-colored foundation, both of which clearly contrast with the light-colored floor. The witnesses, including plaintiff, unanimously testified that nothing obstructed the view of the end cap at the counter's end to which it was attached. It is clear from the photograph, and the undisputed fact that the end cap extended out 26 inches from the end of the counter, that the end cap base would have been visible to an average customer as she approached the end of the aisle, if she were to casually inspect the area. Likewise, other witnesses consistently testified that an individual would have no difficulty observing the end cap as he or she approached the area where plaintiff fell. We are similarly convinced, especially in light of the clear contrast between the end cap base and the floor in the photograph, that a shopper would notice the end cap base if she casually inspected the premises.

Although plaintiff emphasizes on appeal that she never saw the end cap before she fell, and suggested during her deposition that she may not have seen the end cap even if she had been looking down at the ground as she turned the corner, the applicable inquiry is an objective standard. *Hoffner*, 492 Mich at 461. According to plaintiff's deposition testimony, she was "probably . . . looking straight ahead" when she fell, which necessarily means that she was not watching where she was walking at the time. The mere fact that plaintiff did not notice the end cap base herself before she fell does not undermine the clear and undisputed evidence in the record showing that the end cap was open and obvious. Relatedly, plaintiff's contention that "an ordinary user coming down that aisle that turns the corner will typically be looking straight ahead as [she] was doing while shopping" is inapposite given the established principle underlying the open and obvious doctrine that a reasonably prudent person will look where she is going, observe an open and obvious condition in front of her, and take appropriate measures for her own safety. *Bertrand*, 449 Mich at 616-617. Because the end cap base created a risk of harm solely because plaintiff failed to notice it, and there is no evidence that she could not have discovered it and realized its danger, defendant is not liable for her injuries. *Id*. at 611.

Contrary to plaintiff's claims, we detect no basis for concluding that the end cap base was not open and obvious based on the fact that shelving or merchandise was not displayed closer to the average shopper's eye level, or based on testimony regarding steps that had been taken to address empty counters or end caps in the past and steps that could have been taken before the incident in this case. Given the evidence in the record, reasonable minds could not disagree on the issue of whether an average individual would have noticed the end cap base *upon casual inspection*. See *Hoffner*, 492 Mich at 461; *Allison*, 481 Mich at 425.

The trial court also properly concluded that there was no genuine issue of material fact as to whether the end cap included a special aspect that made it unreasonably dangerous. As discussed, there are only "two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*," and "neither a common condition nor an avoidable condition is uniquely dangerous." *Hoffner*, 492 Mich at 463; *Lugo*, 464 Mich at 517-520. It is undisputed that plaintiff only fell a short distance, landing on the end cap and then rolling onto the floor. Falling a short distance to the ground does not involve an especially high likelihood of severe injury or death sufficient to remove a condition from the scope of the open and obvious doctrine. *Lugo*, 464 Mich at 519-520; *Corey v Davenport College of Business*, 251 Mich App 1, 7; 649 NW2d 392 (2002). Moreover, it is undisputed that plaintiff easily could have avoided the end cap by simply walking around it. Thus, the condition was not effectively unavoidable.

Further, plaintiff expressly acknowledged that she had seen end caps in this particular Kmart store as well as other stores, although none of them had been empty. She also testified that she had been to this particular Kmart store approximately 200 times and was very familiar with it. Consistent with plaintiff's testimony, there is no doubt that shoppers routinely encounter end caps in retail stores, and an average shopper would be aware that end caps—whether filled with merchandise or not—are routinely present in between shopping aisles. Therefore, especially given the fact that the end cap was not an unusual condition, there was no genuine issue of material fact that the end cap did not include any special aspects that precluded application of the open and obvious doctrine. See *Hoffner*, 492 Mich at 463; *Lugo*, 464 Mich at 517-520.

-5-

Plaintiff, however, contends that Michigan caselaw involving shopkeepers and distracted shoppers shows that the end cap base had special aspects in this case, such that defendant is liable for her injuries. As plaintiff emphasizes, the Michigan Supreme Court restated the following principles in *Clark v Kmart Corp*, 465 Mich 416, 419; 634 NW2d 347 (2001):

> The duties of a storekeeper to customers regarding dangerous conditions are well established and were set forth in *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968):
>
> > "It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it." [Quoting *Carpenter v Herpolsheimer's Co*, 278 Mich 697; 271 NW 575 (1937) (syllabus) (emphasis added by the *Serinto* Court).]

However, plaintiff mischaracterizes this Court's opinion in *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710; 737 NW2d 179 (2007), and the brief Michigan Supreme Court order in *Compau v Pioneer Resource Co, LLC*, 498 Mich 928 (2015). In *Kennedy*, 274 Mich App at 714-716, the plaintiff contended that the crushed grapes or grape residue on which he fell was not readily apparent to him, and that he could not have been expected to notice or observe the hazard, partially due to the fact that shopkeepers expect, and intend, that customers will direct their attention to displayed merchandise. This Court distinguished *Jaworski v Great Scott Supermarkets, Inc*, 403 Mich 689; 272 NW2d 518 (1978), a case decided under the now-abrogated doctrine of contributory negligence, and reasoned:

> The issue in the case at bar is not whether plaintiff was comparatively negligent in failing to observe and avoid the crushed grapes or grape residue on defendants' floor. Instead, the issue is whether defendants owed plaintiff a duty in the first instance. We readily concede that shoppers in modern grocery stores are often distracted by displays and merchandise. *But mere distractions are not sufficient to prevent application of the open and obvious danger doctrine. Lugo, supra* at 522. Instead, to prevent application of the open and obvious danger doctrine to a typical and obvious condition, the condition must be "effectively unavoidable" or "unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm." *Id*. at 518. "However, typical open and obvious dangers . . . do not give rise to these special aspects." *Id*. at 520.
>
> Like plaintiff in the present case, who argues that he was distracted by the displays and merchandise in defendants' supermarket, the plaintiff in *Lugo* argued that she did not notice or observe a potentially hazardous pothole because she was "distract[ed]" by moving vehicles in the parking lot. *Id*. at 522. *The* Lugo *Court ruled that the relevant inquiry was not merely whether the plaintiff was distracted, but whether there was anything "unusual" about the plaintiff's*

*distraction that would preclude application of the open and obvious danger doctrine. Id.* The Court concluded:

> While plaintiff argues that moving vehicles in the parking lot were a distraction, there is certainly nothing "unusual" about vehicles being driven in a parking lot, and, accordingly, this is not a factor that removes this case from the open and obvious danger doctrine.
>
> \* \* \*
>
> [P]otholes in pavement are an "everyday occurrence" that ordinarily should be observed by a reasonably prudent person. Accordingly, in light of plaintiff's failure to show special aspects of the pothole at issue, it did not pose an unreasonable risk to her. [*Id.* at 522-523.]

> In light of *Lugo,* we conclude that there was nothing unusual about plaintiff's purported distraction; nor is there anything unusual about spilled grapes or grape residue on a supermarket floor. Therefore, even if the reasoning of *Jaworski* still applies under our system of comparative negligence, it does not obviate the fact that the crushed grapes on which plaintiff slipped were open and obvious as a matter of law. Reasonable minds could not disagree that the crushed grapes on which plaintiff slipped were not "unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm." *Lugo, supra* at 518. [*Kennedy*, 274 Mich App at 716-717 (emphasis added).]

The relevant question before us is "whether there was anything 'unusual' about the plaintiff's distraction that would preclude application of the open and obvious danger doctrine." *Id*. at 717. The issue is not merely whether there was an issue of material fact as to whether plaintiff was distracted from an open and obvious condition. See *id*. Plaintiff failed to establish that there was anything unusual about the "90% OFF" advertisement in this case. The evidence in the record clearly establishes that empty shelves and "90% OFF" signs were a common occurrence on the day of the incident. Merchandise was selling very quickly in the store due to the fact that it was the last day that it would be open to the public, and the public was aware of the significant sale prices. Notably, plaintiff expressly confirmed that she noticed when she arrived at the store that many of the aisles and shelves were empty, with only "a few aisles left in the store with limited merchandise on them . . . ." Accordingly, contrary to plaintiff's claims, reasonable minds could not differ in concluding that there was nothing unusual about the aisle down which plaintiff was walking immediately before she fell that would transform the sign into a special aspect. As in *Lago*, plaintiff failed to establish that the sign constituted a special aspect of the end cap base that rendered it unreasonably dangerous. See *Kennedy*, 274 Mich App at 716-717, citing *Lago*, 464 Mich at 522-523.

Furthermore, plaintiff fails to acknowledge the context of this Court's statements in the next section of the *Kennedy* opinion, on which plaintiff heavily relies. The Court stated:

Plaintiff next contends that even if the crushed grapes and grape residue were obvious and readily apparent, the open and obvious danger doctrine does not apply to bar recovery in this case because defendants should have known that he would be distracted by their displays and merchandise. Again, we disagree. It is true that in some cases, " 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.' " *Bertrand, supra* at 611, quoting 2 Restatement Torts, 2d, § 343A, comment f, p 220. We fully recognize that " '[s]uch reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious,' " and that in such cases the open and obvious danger doctrine will not apply to bar the defendant's duty to the invitee. *Bertrand, supra* at 611-612, quoting 2 Restatement Torts, 2d, § 343A, comment f, p 220.

However, plaintiff in this case has simply failed to raise a genuine issue of fact with respect to whether defendants knew or should have known that his attention would be distracted in this manner. We do not dispute that the evidence in this case, including numerous past accident reports from several of defendants' supermarkets, established that defendants should have been aware of the potential slipping hazard posed by crushed grapes or grape residue. *In contrast, however, there was no evidence introduced in this case to establish or even suggest that defendants knew or should have known that plaintiff would be sufficiently distracted by the displays and merchandise so as to divert his attention from this otherwise open and obvious slipping hazard.* Again referring to *Jaworski*, plaintiff essentially asks us to conclude that all shoppers, as a matter of course, are distracted by supermarket displays and merchandise. However, we will not create such a broad rule, especially in light of the fact that public policy requires individuals to take some degree of reasonable care for their own safety. *Bertrand, supra* at 616-617. Moreover, as this Court has previously observed, "We see no valid reason to extend *Jaworski* and create a special standard of care for supermarket patrons." *Charleston, supra* at 419. In short, it was plaintiff's burden to establish a genuine issue of material fact with respect to whether defendants "ha[d] reason to expect that the invitee's attention [might have been] distracted, so that he [would] not discover what [was] obvious . . . ." *Bertrand, supra* at 611-612, quoting 2 Restatement Torts, 2d, § 343A, p 220. However, he did not come forward with sufficient evidence to meet this burden. Plaintiff has failed to create a genuine factual dispute with respect to whether defendants knew or should have known that his attention would be distracted away from the open and obvious danger. [*Kennedy*, 274 Mich App at 718-719 (emphasis added).]

Likewise, here, plaintiff failed to proffer any evidence creating a genuine issue of material fact as to whether defendant knew or should have known that plaintiff's attention would be sufficiently drawn away from the open and obvious end cap base such that she would fail to notice the end cap. Again, plaintiff, as well as defendant's employees, testified that numerous aisles had little or no merchandise. There simply is no basis in the record that defendant should have expected an ordinary customer to be distracted by a sign in an empty aisle, just like many

other aisles, and fail to notice the plainly open and obvious end cap base. See also *Quinto v Woodward Detroit CVS, LLC*, 305 Mich App 73, 76; 850 NW2d 642 (2014) (reluctantly applying *Kennedy* and upholding a trial court's grant of summary disposition in favor of the defendant under facts strikingly similar to this case).

Therefore, there was no genuine issue of material fact that the end cap at issue did not include any special aspects that would preclude the application of the open and obvious doctrine. Because the end cap base created a risk of harm solely because plaintiff failed to notice it, and there is no evidence that she could not have discovered it and realized its danger if she had casually inspected the area as she was walking, defendant is not liable for her injuries. *Bertrand*, 449 Mich at 611. The trial court properly granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10).[4]

Affirmed.

/s/ Michael J. Riordan
/s/ Brock A. Swartzle

---

[4] We note that plaintiff's two-count complaint alleged negligence and premises liability claims. However, the allegations under each count are nearly identical, and the gravamen of both claims is that plaintiff's injuries occurred as a result of a condition on defendant's premises. Accordingly, plaintiff's claim sounds in premises liability, and the trial court did not err in dismissing plaintiff's entire complaint, including her ordinary negligence claim. See *Jahnke v Allen*, 308 Mich App 472, 474-476; 865 NW2d 49 (2014) (stating the applicable rules and distinguishing between ordinary negligence and premises liability claims); see also *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913, 914 (2010); *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001).