# STATE OF MICHIGAN

# COURT OF APPEALS

ALVARO AGUILLON,

        Plaintiff/Counter-Defendant-
        Appellee,

v

FERNANDO FERNANDEZ,

        Defendant/Counter-Plaintiff-
        Appellant.

UNPUBLISHED
May 18, 2017

No. 331259
Kent Circuit Court
LC No. 14-011668-NO

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

This case stems from a landlord's action for possession and unpaid rent, in which the tenant, in turn, counterclaimed under numerous legal theories for an injury to his foot. The counterclaims were removed to circuit court where after discovery and motions for summary disposition, the circuit dismissed all the tenant's counterclaims except for breach of the lease, which the court remanded to the district court. Defendant/counter-plaintiff Fernando Fernandez ("plaintiff" or "Fernandez"), appeals by right the circuit court's December 4, 2015 opinion and order that granted plaintiff/counter-defendant Alvaro Aguillon ("defendant" or "Aguillon"), summary disposition regarding all theories of liability for personal injury. Because we conclude the circuit court committed no error that warrants reversal, we affirm.

The parties entered a written one-year lease on August 22, 2013, which converted to a month-to-month rental at the conclusion of the one-year term. Fernandez and his wife moved into the rental unit, which consisted of the first floor of an older home, in September 2013. Before Fernandez and his family moved into the apartment, it was approved by two government housing inspectors. One inspector, Patrick Buhay, testified that the purpose of the inspection was to make sure "the unit is safe, decent dwelling for all" and acknowledged that he looked for trip hazards, as well as for cracked tile flooring. Buhay "concluded that the flooring passed inspection." The apartment was also inspected by Katheryn Ralston, a housing inspector for the city of Grand Rapids. The city issued a certificate of compliance for the property on October 7, 2013.

On November 18, 2014, Aguillon filed an action in district court against Fernandez for possession and unpaid rent. Fernandez answered the complaint and filed a counterclaim, which was eventually removed to circuit court and amended to state numerous claims, including negligence in failing to maintain the apartment in good repair, premises liability, and creating a

nuisance.[1]  As the underlying basis of the counterclaim, Fernandez alleged he cut his left foot on a broken tile in the kitchen floor, developed a MRSA infection, and underwent four successive surgeries to remove portions of his foot that eventually resulted in amputation of his left foot.

During discovery, Fernandez acknowledged he was a diabetic which caused cracked, dry feet.  Discovery also showed that Fernandez did not follow his doctor's advice, including taking his medication, attending appointments, and monitoring his blood glucose levels.  Fernandez acknowledged that his doctor had warned him not to walk barefoot, and that if the cracks, lesions, or sores on his feet became infected, amputation may become necessary.

Fernandez is not certain regarding the details of the incident that he claims resulted in a cut on the bottom of his foot, which subsequently became infected.  On some unspecified night Fernandez woke up at three a.m. and walked barefoot to the bathroom, which required him to walk through the living room and the kitchen where the floor tile was one-inch higher than the living room floor.  Fernandez's theory of the case, according to his testimony, was that he cut his foot on the edge of an intact tile at the threshold between the living room and the kitchen:

Q.  Okay.  Before you went to bed that evening before the incident, did this piece of tile on the last page of Exhibit 4, it still had a straight edge running across it?

A.  Correct.

Q.  To the threshold of the door?

A.  Correct.

Q.  Okay.  And that edge wasn't sharp, was it?

A.  I think it was sharp enough to cut me.

Fernandez did not realize the bottom middle of his left foot had been cut until two days after the alleged incident when his wife, Tania Fernandez, looked at his foot.  Later photographs depict a broken tile at the threshold, but Fernandez was also unclear as to when the tile broke. He testified that the tile at the threshold between the living room and kitchen, as depicted in photographs, broke when he stepped on it.  But he also testified that the piece of tile broke off at some point *after* the incident when his wife was mopping the floor. In any event, Fernandez did not trip and fall during the incident; he stated he stumbled a bit.

Fernandez testified that he was always aware of the one-inch difference in the floor height at the threshold between the living room and the kitchen.  Fernandez claimed that he told Aguillon that a "separator" was needed, but "he never did anything."  Fernandez also testified to have had numerous conversations with Aguillon before the incident about the need, in general, for new tile and, in particular, for new tile in the hallway between the kitchen and the bathroom.

---

[1] Aguillon asserted other claims but does not appeal the circuit court's order dismissing them.

In preparing for the tile repair work a month before he was injured, Fernandez removed the tile in the hallway to the bathroom, and Aguillon left a box of tiles outside the apartment. According to Fernandez, Aguillon said that he would install the tile but never did.

Aguillon testified that the only tile repair work that Fernandez ever talked to him about was during August 2014 that pertained to the tile in the hallway between the kitchen and the bathroom. According to Aguillon, "we only discussed the hall. . . . [H]e never ask[ed] about kitchen or nothing else. He said it was some loosing [sic] tiles between the kitchen and the bathroom hall is what he told me." Aguillon dropped off a box of tiles at the apartment and authorized Fernandez to do the work, promising to reimburse Fernandez for any expenses that Fernandez could document with receipts.

The circuit court, in granting Aguillon's motion for summary disposition on all of Fernandez's counterclaims except for breach of lease, ruled that Fernandez's negligence claim was subsumed by his premises liability claim because it was based on a dangerous condition of the property. The circuit court next ruled that Fernandez's premises liability claim failed because the height difference between the tile kitchen and the wood floor of the living room did not rise to the level of an unreasonably dangerous condition. The circuit court also erroneously concluded that "the height difference between the wood flooring and the tile was a condition created by Fernandez himself when he removed the tiling from the hallway."[2]

Finally, the circuit court determined that the nuisance claim failed. Fernandez's theory was that by failing to maintain the premises, Aguillon created a dangerous condition that interfered with Fernandez's enjoyment of the property. The circuit court ruled that the evidence presented failed to establish a claim for a private nuisance because Fernandez's premises liability and negligence claims failed.

The circuit court subsequently denied Fernandez's motion for reconsideration on January 4, 2016. Fernandez appeals by right the circuit court's dismissal of his negligence, premises liability, and nuisance claims, and the circuit court's order remanding his claim for breach of lease to the district court.

## I. STANDARD OF REVIEW

We review a trial court's grant or denial of a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim; the moving party

---

[2] The circuit court misread the record, apparently because of the plethora of evidence concerning the proposed retiling between the kitchen and bathroom, which the undisputed evidence showed both Fernandez (by taking up the old tiles), and Aguillon (by delivering new tiles to the apartment), had begun before Fernandez's alleged injury at the different location of living room-kitchen threshold. The difference in height between the kitchen floor and the living room floor existed when Fernandez moved into the apartment; Fernandez testified that he was always aware of it and negotiated it often.

must specifically identify the undisputed factual issues, MCR 2.116(G)(4), and support its position with affidavits, depositions, admissions, or documentary evidence, MCR 2.116(G)(3)(b). See *Maiden*, 461 Mich at 120. If the moving party carries its initial burden, the party opposing summary disposition must demonstrate that a disputed question of material fact exists by submitting evidence the content or substance of which would be admissible to establish or deny the grounds stated in the motion. See MCR 2.116(G)(6); see also *Maiden*, 461 Mich at 120-121. When considering the motion, a court must view the submitted evidence in a light most favorable to the party opposing the motion. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A trial court properly grants the motion when the evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

## II. ANALYSIS

We must affirm the trial court. Under all the legal theories that Fernandez advances, his claim is based on an injury received from a condition of the leased property—the one-inch height difference between the tile kitchen floor and the living room floor. A claim based on the *condition* of the premises is a premises liability claim. *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001); *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005).

While Aguillon owed a duty to exercise reasonable care to protect his tenant "from an unreasonable risk of harm caused by a dangerous condition on the land," *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), this duty does not extend to "dangers [that] are known to the [tenant] or are so obvious that the [tenant] might reasonably be expected to discover them, *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). The one-inch difference between the living room and kitchen floors was an open and obvious condition that Fernandez was well aware of: he had safely traversed the kitchen threshold for over a year before his injury. Further, the kitchen threshold did not present "special aspects" to impose liability despite its being open and obvious because the condition was not "effectively unavoidable," leading to a "uniquely high likelihood of harm," or impose "an unreasonably high risk of severe harm." *Lugo*, 464 Mich at 518-519.

Fernandez has also failed to establish a personal injury claim under MCL 554.139(1)(b), which imposes a covenant in every residential lease "[t]o keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located[.]" "The open and obvious doctrine cannot be used to avoid [this] specific statutory duty." *Woodbury v Bruckner*, 467 Mich 922; 658 NW2d 482 (2002). But to prove his claim, Fernandez must show that the one-inch height difference between the living room and kitchen floors was a "defect" requiring "repair." "The plain meaning of 'reasonable repair' as used in MCL 554.139(1)(b) requires repair of a defect in the premises." *Teufel v Watkins,* 267 Mich App 425, 429 n 1; 705 NW2d 164 (2005), overruled in part on other grounds *Allison v AEW Capital Mgmt*, 481 Mich 419, 438 (2008). A "defect" within the ambit of § 139(1)(b) has been defined as " 'a fault or shortcoming; imperfection.' " *Allison v AEW Capital Mgmt*, 481 Mich 419, 434; 751 NW2d 8 (2008) (citation omitted). Thus, keeping the premises in reasonable repair under the statute

means "repairing a defect . . . to keep[] the premises in a good condition as a result of restoring and mending damage to the property. *Id*. While Fernandez offered expert testimony that the kitchen threshold was "unreasonably dangerous and presented an unavoidable trip hazard," this testimony goes to the open and obvious doctrine but does not show defective or damaged property needing repair. Fernandez conceded that his injury, a cut on the bottom of his foot, occurred from stepping on the edge of a cracked but intact tile at the kitchen threshold, not a fall.

Moreover, for tort liability to attach on the basis of an alleged breach of the covenant of reasonable repair that MCL 554.139(1)(b) imposes on the lease, Fernandez must show not only that the kitchen threshold was a defect requiring repair but also that the " 'disrepair create[d] an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented.' " *Mobil Oil Corp v Thorn*, 401 Mich 306, 312; 258 NW2d 30 (1977), quoting 2 Restatement Torts, 2d, § 357. This element would equate to showing "special aspects" with respect to open and obvious conditions. "The touchstone of the 'special aspects' analysis is that the condition must be characterized by its *unreasonable risk of harm*." *Hoffner v Lanctoe*, 492 Mich 450, 455; 821 NW2d 88 (2012). As discussed more fully below, the one-inch rise at the kitchen threshold did not present "special aspects" rendering it unreasonably dangerous.

Fernandez also asserts that his personal injury claim under the theories of ordinary negligence and nuisance are not subject to the open and obvious defense because these theories are based on Aguillon's conduct. We disagree. The conduct that Fernandez relies on is Aguillon's leaving a box of tiles outside the apartment for the purpose of replacing old tiles in the hallway between the kitchen and the bathroom, which Fernandez had removed in preparation of their replacement. This evidence fails to show any conduct of Aguillon inside the apartment. Moreover, the location of the tile work is not even remotely connected to Fernandez's injury. Aguillon's bringing tiles to the apartment for repairs to be made to a distinctly different location from that where Fernandez alleges he cut his foot—the living room to kitchen threshold—could not possibly have caused Fernandez's injury.

Fernandez also argues that a neighbor would testify that Aguillon performed work on the tile kitchen floor before Fernandez moved into the apartment, which considering in the light most favorable to Fernandez, could include the kitchen threshold tile at issue. But this argument fails as a matter of law because the injury Fernandez alleges still arose out of a condition of the premises. "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). The focus of the open and obvious doctrine is the nature of the condition of the premises that the defendant premises possessor either created or allowed to continue. See *Lugo*, 464 Mich at 522 n 5; *Laier*, 266 Mich App at 498. So, whether Aguillon created or negligently allowed the kitchen threshold condition to continue, Fernandez's injury claim based ordinary negligence is subject to analysis under the open and obvious doctrine. *James*, 464 Mich at 18-19; *Buhalis*, 296 Mich App at 692.

Similarly, with respect to his claim of nuisance, Fernandez argues that it is not subject to analysis under the open and obvious doctrine because he has asserted an independent negligence claim based on Aguillon's conduct. As just discussed, the premise of this argument is not valid.

Fernandez negligence claim is actually one of premises liability based on the condition of the property that fails because the kitchen threshold did not present "special aspects" so as to impose liability despite its being open and obvious, as discussed next.

In a premises liability action, the level of duty the party that possesses and controls real property owes to a party entering the property depends on the status of the injured party. *Stitt v Holland Abundant Life Fellowship,* 462 Mich 591, 596-597; 614 NW2d 88 (2000). The property's possessor owes the highest duty of care to an invitee, in this case, Fernandez, who enters the land on possessor's invitation that carries with it the implied assurance that reasonable care has been taken to render the premises reasonably safe. *Id.* So, Aguillon had a legal duty to make reasonable efforts to render the premises reasonably safe for his invitees and to exercise reasonable care to protect Fernandez as an invitee from an unreasonable risk of harm from a dangerous condition on the property. *Hoffner,* 492 Mich at 460. But landlords like Aguillon "are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Id.* at 459. A tenant-invitee must take reasonable care for his or her own safety because of "the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the [landlord] to make ordinary [conditions] 'foolproof.'" *Bertrand v Alan Ford, Inc,* 449 Mich 606, 616-617; 537 NW2d 185 (1995).

A tenant-invitee's duty to use care for his or her own safety is an integral part of the definition of the landlord-property possessor's duty of care to his tenant-invitees. *Lugo,* 464 Mich at 516. "The possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner,* 492 Mich at 460-461. Under the open and obvious doctrine, "where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle,* 440 Mich at 96. A landlord has a duty to take reasonable precautions to protect tenants from open and obvious dangers only "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo,* 464 Mich at 517. "[T]his narrow 'special aspects' exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Hoffner,* 492 Mich at 462. "Special aspects" giving rise to liability may exist in two circumstances: "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable.*" *Id.* at 463 (emphasis in original). In either circumstance, the "special aspect" that removes a condition from the open and obvious doctrine must "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Lugo,* 464 Mich at 519. Our Supreme Court has "recognized that neither a common condition nor an avoidable condition is uniquely dangerous." *Hoffner,* 492 Mich at 463.

Michigan law also recognizes that steps or differing floor heights are such common occurrences that they generally are not unreasonably dangerous and do not give rise to premises liability. *Bertrand,* 449 Mich at 614 ("the general rule emerged that steps and differing floor levels were not ordinarily actionable unless unique circumstances surrounding the area in issue made the situation unreasonably dangerous"). For this rule, the *Bertrand* Court cited *Garret v WS Butterfield Theatres,* 261 Mich 262; 246 NW 57 (1933), and *Boyle v Preketes,* 262 Mich 629; 247 NW 763 (1933).

In *Bertrand*, the Court analyzed two companion cases in which invitees were injured falling on steps located on the premises, using the modern open and obvious doctrine. *Bertrand*, 449 Mich at 609, 612-613. The Court opined that "the danger of tripping and falling on a step is generally open and obvious, [so] the failure to warn theory cannot establish liability." *Id*. at 614. But where "special aspects" of "particular steps that make the risk of harm unreasonable," the failure to remedy the dangerous condition may be a breach of the duty to keep the premises reasonably safe. *Id*. Thus, "where there is something unusual about the steps, because of their 'character, location, or surrounding conditions,' then the duty of the possessor of land to exercise reasonable care remains." *Id*. at 617.

In the present case, there is no dispute that the one-inch height difference between the wooden living room floor and the tile kitchen floor was open and obvious. Further, it is undisputed that Fernandez was fully aware of this condition from the time he moved into the premises and that he had been safely traversing the kitchen threshold for over a year before his injury. He asserts, nevertheless, through expert testimony, that the kitchen threshold was unreasonably dangerous and presented an unavoidable trip hazard. But Fernandez was not injured by tripping and falling; he was injured because as a diabetic, his feet were unusually susceptible to injury and serious infection, which unfortunately occurred. It should be noted that whether a condition comes within the open and obvious doctrine is determined not by the subjective experience of the injured person but rather by focusing on the "objective nature of the condition of the premises at issue." *Lugo*, 464 Mich at 524. As the Court explained:

> It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. This is because a plaintiff may suffer a more or less severe injury because of idiosyncratic reasons, such as having a particular susceptibility to injury or engaging in unforeseeable conduct, that are immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous. [*Id*. at 519 n 2.]

In this case, there is nothing about the objective nature of the one-inch raised kitchen floor that would support finding that it possesses special aspects that give rise to a unique likelihood of severe harm so as to remove the condition from the open and obvious danger doctrine. *Id*. at 519. The edge of the tile floor at the kitchen threshold—which was the injury-causing instrumentality—was also avoidable. This condition was not like the example of an unavoidable condition discussed in *Lugo* of "a commercial building with only one exit for the general public where the floor is covered with standing water." *Id*. at 518. In the *Lugo* example, the invited public had to walk on the slippery, watery floor to exit the building. In the present case, even though a person in the living room or bedroom must pass *over* the threshold edge at issue, the person need not step *on* the edge: it could be avoided by simply stepping over the edge. Thus, the kitchen threshold edge was not effectively unavoidable because a person could safely step over it when passing from the living room to the kitchen, as Fernandez demonstrated by safely using the same doorway for over a year before his injury. Moreover, Fernandez could have avoided the danger the edge presented to his feet by simply following his doctor's advice and wearing slippers or other footwear. Because the danger presented by the edge of the kitchen threshold could have been avoided, it did not present "special aspects that give rise to a uniquely high likelihood of harm." *Id*. at 519; *Hoffner*, 492 Mich at 463.

-7-

In sum, all the legal theories that Fernandez advances are based on an injury arising from a condition of the leased property—the one-inch height difference between the tile kitchen floor and the living room floor. These claims are based on the *condition* of the leased property, and therefore are premises liability claims. *James*, 464 Mich at 18-19; *Laier*, 266 Mich App at 493. The one-inch difference between the living room and kitchen floors was an open and obvious condition that Fernandez knew about and had safely traversed for over a year before his injury. Further, the kitchen threshold did not present any "special aspects" requisite to impose liability despite its being open and obvious because the condition was not "effectively unavoidable" leading to a "uniquely high likelihood of harm" or impose "an unreasonably high risk of severe harm." *Lugo*, 464 Mich at 518-519.

Additionally, the one-inch difference between the living room and kitchen floors was not a "defect" requiring repair under MCL 554.139(1)(b). See *Allison*, 481 Mich at 432 n 6, 434; *Teufel*, 267 Mich App at 429 n 1. Further, liability could not attach for this alleged statutory violation because the "defect" was not unreasonably dangerous, *Thorn*, 401 Mich at 311-312. For the same reasons, there were no "special aspects" under the open and obvious doctrine.

Consequently, Aguillon was entitled to summary disposition of all Fernandez's legal theories of liability for the unfortunate injury he sustained. *Lugo*, 464 Mich at 514, 519 n 3; *Hoffner*, 492 Mich at 473-474; *Thorn*, 401 Mich at 311-312.

Finally, Fernandez argues that the circuit court erred by remanding his breach of lease claim to the district court because his initial counterclaims satisfied the jurisdictional limits of the circuit court, see *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992), and because he may recover for the injury to his foot as consequential breach of contract damages. We disagree. We review this argument de novo. See *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004), noting this Court reviews de novo issues of statutory and contract interpretation.

We find no error warranting reversal. The only covenant in the lease that might possibly permit Fernandez to recover damages for the injury to his foot is that implied by law under MCL 554.139(1)(b) to maintain residential premises in "reasonable repair." Because Fernandez's claim under § 139(1)(b) fails for the reasons discussed already, his argument that the trial court erred by remanding his breach of lease claim to the district court must also fail.

Moreover, even if Fernandez could fit the injury to his foot into a breach of lease claim, the law of contract damages would not permit recovery for its subsequent infection and amputation. Tort rules of damages do not apply, including that "the defendant takes the injured person as he finds him." *Richman v City of Berkley*, 84 Mich App 258, 260-261; 269 NW2d 555 (1978). This rule provides: "A tortfeasor takes a victim as the tortfeasor finds the victim and will be held responsible for the full extent of the injury, even though a latent susceptibility of the victim renders the injury far more serious than reasonably could have been anticipated." *Wilkinson v Lee*, 463 Mich 388, 394-395; 617 NW2d 305 (2000). Instead, "the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980).

It cannot be asserted that the lease contained a provision to eliminate the one-inch floor height difference at the threshold to the kitchen from the living room. This condition existed at the inception of occupancy, and Fernandez agreed in the lease that "[t]enant has checked the Premises thoroughly and agrees that it is entirely habitable as to health and safely[.]" Further, the lease provides: "Landlord shall not be liable for any damage or injury occurring on or about the Premises to Tenant, Tenant's family members, guests or invitees, except in the case of Landlord's failure to perform, or negligent performance of a duly impose by law." Thus, under the *Kewin* rule, it cannot be asserted that Fernandez's recovering damages for injury to his foot was "in the contemplation of the parties at the time the contract was made." *Kewin*, 409 Mich at 414. Consequently, Fernandez's only basis for this claim is MCL 554.139(1)(b), and its implied covenant to "keep the premises in reasonable repair during the term of the lease or license . . . ." Again, because Fernandez's claim under § 139 fails for the reasons discussed *supra*, his breach of lease argument must also fail.

We affirm. As the prevailing party, Aguillon may tax his costs pursuant to MCR 7.219.


/s/ Jane E. Markey
/s/ Patrick M. Meter

-9-