# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DAVID NIEHAUS, by MARY
BANKA, Personal Representative,

UNPUBLISHED
July 25, 2017

Plaintiff-Appellant,

v

No. 332938
Kent Circuit Court
LC No. 14-009692-NO

ASIA NAILS LLC,

Defendant-Appellee.

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

In this negligence case, plaintiff, Mary Banka, as personal representative of the estate of David Niehaus, appeals by right from the circuit court's order of April 11, 2016, granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact, and moving party entitled to judgment as a matter of law). For the reasons more fully explained below, we affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the morning of November 13, 2012, David Niehaus went to Asia Nails, where he received a pedicure from nail technician and part owner of the salon, Vy Tran. Tran testified at her deposition that when she gives pedicures, she turns on the hose that delivers water into the foot basin of the pedicure chair and tests the "warmness" with her hand.[1] Tran said that water comes out of the hose cold, and she "put [her] hand there until it's warm." When the water is up to the basin's fill-line, she has the customer put his or her feet into the water and then asks if the

---

[1] Tran provided her deposition testimony through the use of a Vietnamese translator. At the deposition, plaintiff's counsel asked Tran about her English; specifically, whether she would "be able to communicate with someone who speaks only English." Tran replied, "I can communicate with him regarding to nails, anything related to my profession, but I do not communicate in—outside of that area, so my English is limited to those areas, but I can talk to him—to people about nails."

-1-

customer would like the temperature of the water increased or decreased. Then, Tran takes one foot out of the basin to "clean and work on," puts it back in, and then does the same with the other foot. When she cleans the nails, and if the feet are dirty, Tran wears one or two disposable gloves. After she has cleaned the feet and trimmed the nails, she drains the water from the basin and rinses the feet with clean, running water. She then takes the feet out of the basin and massages them. According to Tran, Niehaus never discussed his medical health with her, he did not complain during his pedicure, and he left her a tip and seemed happy when he departed the salon.

A few hours after he left Asia Nails, Niehaus went to Metro Health Hospital, where he presented with burns to both of his feet. Niehaus reported to the attendant that he had had a pedicure earlier in the day and had not noticed anything at the time, "but after returning home he attempted to take his socks off and the socks peeled the skin off of his feet." The hospital record noted that Niehaus had a history of diabetic neuropathy and could not feel anything in his feet, so he did not report feeling any pain. The record described Niehaus's injuries as follows:

> Evaluation of the bilateral feet does reveal partial thickness second degree burns noted to the bilateral feet. On the left foot there is complete skin sloughing noted of the skin of the entire foot which has sloughed off from just proximal to the malleoli distally over the entire foot. On the right lower extremity there is blistering and skin sloughing noted to the plantar surface of the foot and there is an area of skin sloughing noted on the dorsum of the right foot. No full thickness [i.e., third-degree] burns are appreciated.[2]

After being treated, Niehaus was instructed to contact the Spectrum Health burn center the next day and stay off his feet as much as possible, walking only to the bathroom and kitchen as necessary.

Niehaus kept his appointment at the burn center the following day and was eventually admitted to the hospital, where he stayed for roughly two weeks. During his stay, Niehaus received treatment for his burns, including two rounds of debridement and a skin graft. Niehaus's condition stabilized and improved enough to allow his discharge on December 3, 2012.

Niehaus died at home three days later. His death certificate lists his manner of death as "accidental," and lists "cutaneous burn injury of feet" as a significant condition contributing to his death. David A. Smart, M.D., a forensic pathologist and the medical examiner who signed Niehaus's death certificate, testified at his deposition that the manner of death was listed as " 'accidental' due to the contribution of a traumatic injury to the death, specifically the burn injury to the feet." Smart explained,

---

[2] The Spectrum Health medical record indicates that Niehaus also had a third-degree burn "on the dorsal aspect of his left foot extending from the distal interspaces to approximately 4 cm up off the calf to the sharper point of demarcation."

The injuries were of sufficient nature that they required hospitalization treatment for these injuries and even though he was at home when the death occurred, he was still undergoing treatment, and so that due to the proximity of the injury to the death and the ongoing treatment for the injury, then I felt that the injury had a significant contribution to the death; that it should be listed under a significant contributory condition to the death, and because it is a non-natural process, then the manner of death is certified as accidental.

On October 10, 2014, plaintiff, Niehaus's cousin, filed a two-count complaint alleging negligence/gross negligence (Count I) and premises liability (Count II). In Count I, plaintiff alleged that defendant owed Niehaus "a duty to use reasonable care and to not injure him," and that it breached these duties through the negligent and grossly negligent actions of its agents and employees. Among other things, defendant negligently exposed Niehaus's feet to scalding water, failed to inspect and decrease the water's temperature, failed to use a thermometer to gauge the water's temperature, failed to train and supervise employees to ensure they did not give scalding hot footbaths, and failed to implement a maintenance plan for inspecting the water's temperature. Plaintiff also alleged that defendant negligently failed to inspect and maintain the water heater and to adhere to all warnings and instructions on the water heater. Plaintiff further alleged in Count I that defendant failed to warn "plaintiff" [sic, Niehaus] of an "unreasonable dangerous condition." As a direct result of defendant's negligence, plaintiff stated, Niehaus sustained second- and third-degree burns on his feet and ankles, required multiple medical procedures, incurred huge medical expenses, and suffered various other injuries and damages, including wrongful death.

In Count II, plaintiff asserted that Niehaus was a business invitee of defendant's, and that defendant, as owner, possessor, and operator of the salon, owed Niehaus a duty of care to protect him from unreasonable risks of harm on its premises that defendant knew or should have known about. Defendant knew or should have known that there was scalding hot water in the footbath, that it was unreasonably dangerous, and that it created an unreasonable risk of harm for Niehaus. Defendant breached its duty by, among other things, failing to monitor the water temperature, establish procedures for monitoring the water temperature, and alert Niehaus of the unreasonable risks of harm due to scalding footbaths that defendant knew or should have known about. Because of defendant's breach of duty, Niehaus suffered various injuries and damages, including wrongful death.[3]

Following discovery, on February 4, 2016, defendant moved for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued that plaintiff's complaint sounded only in premises liability. Relying on *Valinski v Little Mexico Restaurant*, unpublished opinion per curiam of the Court of Appeals, issued September 24, 2002 (Docket 233446), in which this Court concluded that "[s]erving food items on a hot skillet could be considered an activity or condition

---

[3] Plaintiff simply cut and pasted the paragraph alleging the harm Niehaus suffered from Count I to the conclusion of Count II, without changing its numbering or alleging that the harm resulted from defendant's conduct as possessor of the premises where Niehaus was allegedly injured.

on the land[,]" defendant argued that hot water in a pedicure basin was a condition on the land of a nail salon. Defendant also argued that it had no notice of an alleged danger, since Tran had put her hands into the same water without suffering burns. Defendant further argued that the danger of the scalding water was open and obvious, since the average person would have immediately withdrawn his or her feet from the hot water in the basin, and that the hot water was neither exceptionally dangerous nor unavoidable. Finally, defendant argued that plaintiff could not meet its burden to establish proximate cause because the proximate cause of Niehaus's injuries was not the hot water, but his failure to advise defendant of his diabetic neuropathy.

Contrariwise, plaintiff stressed that it was the negligent provision of a service that caused Niehaus's injuries, not a condition on the land.[4] Niehaus did not "fall into a pool of scalding water, or receive his burns because faulty pipes burst," plaintiff argued. Rather, defendant caused Niehaus's injuries by filling a pedicure basin with scalding water and directing him to submerge his feet into it without first checking the temperature of the water in the full basin. Plaintiff contended that it was axiomatic that a salon providing pedicures had a duty not to burn the customer with scalding water and that, but for defendant's actions and omissions in providing the service, Niehaus would not have submerged his feet in the scalding water, which resulted in foreseeable injuries.

Following a hearing on defendant's motion, the trial court found *Valinski* to be persuasive[5] and concluded that the matter sounded only in premises liability and that the scalding water was an open and obvious danger that the average person would have avoided by immediately removing his or her feet from the water before suffering injury. Accordingly, the court granted defendant's motion for summary disposition. Plaintiff now appeals.

---

[4] At one point, plaintiff had argued that Tran and Hai Dinh Le, Tran's husband and co-owner of the salon, negligently failed to inform themselves about the risk of scalding, and that defendant violated the Michigan Plumbing Code by not installing an anti-scalding device. Plaintiff appears to have abandoned these arguments, as she did not raise them in her brief to this Court.

[5] The court also relied upon *Jahnk v Allen*, 308 Mich App 472; 865 NW2d 49 (2014). In *Jahnk*, the plaintiff fell while walking arm-in-arm with the defendant when her foot slipped off the edge of concrete pavers that had been removed as part of a landscaping project on the defendant's property. The trial court granted the defendant's motion for summary disposition on grounds that the plaintiff's claim sounded in premises liability, not ordinary negligence. On appeal, the plaintiff argued that the claim sounded in ordinary negligence because the defendant had negligently escorted her when she was suffering from dizziness. *Id*. at 476. This Court disagreed, reasoning that the plaintiff's injury occurred because of a condition on the land, i.e., the removal of the concrete pavers. The Court further noted that the defendant's creation of the condition did not transform a premises liability claim into a general negligence claim, stating "a plaintiff cannot avoid the open and obvious danger doctrine by claiming ordinary negligence, when the facts only support a premises liability claim . . . ." *Id*.

-4-

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Auto Club Group Ins Co v. Burchell,* 249 Mich App 468, 479; 642 NW2d 406 (2002). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*; MCR 2.116(C)(10), (G)(5).

### B. ORDINARY NEGLIGENCE

Plaintiff contends that she alleged a valid claim for ordinary negligence and, therefore, that the trial court erred in dismissing her entire claim under the open and obvious danger doctrine. We agree.

As an initial matter, we note that, given the proper factual scenario, a plaintiff may simultaneously assert theories of premises liability and ordinary negligence; the assertion of one does not preclude assertion of the other. See *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). A premises liability claim arises from a condition on the land, whereas a claim of ordinary negligence arises from a defendant's conduct. See *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001). "To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages." *Laier* 266 Mich App at 495.

Duty is a legally recognized obligation to conform to a particular standard of conduct toward another. *Rakowski v Sarb*, 269 Mich App 619, 629; 713 NW2d 787 (2006). Duty can arise from a statute or a contract or by application of the basic rule of common law obligating one to use due care or to act so as not to unreasonably endanger the person or property of others. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012). "Factors relevant to the determination whether a legal duty exists include the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*. at 661 (quotation marks and citation omitted). The issue of foreseeability pertains to both the foreseeability that the defendant's conduct would create a risk of harm to another and whether the result of that conduct and intervening causes was foreseeable. *McMillan v State Hwy Comm*, 426 Mich 46, 61-62; 393 NW2d 332 (1986). Ordinarily, whether the defendant owes the plaintiff a duty is a question of law for the court to decide. *Moning v Alfono*, 400 Mich 425, 436-437; 254 NW2d 759 (1977). A breach occurs when a defendant's conduct falls short of the defendant's general and specific standard of care. *Id*. at 437-438. Whether the defendant's conduct falls short of the required standard of care is a question of fact. *Id*. at 438.

Regarding causation, Michigan's Supreme Court has explained: "In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct. These two prongs are respectively described as 'cause-in-fact' and 'legal causation.' " *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010).

Evidence of cause in fact is sufficient if the jury may conclude that, more likely than not, but for the defendant's conduct the plaintiff's injuries would not have occurred. *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687 NW2d 380 (2004). There can be more than one cause in fact. See *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). To establish that a defendant's conduct was a cause in fact of a plaintiff's injuries, the plaintiff must "set[] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id*. (quotation marks and citation omitted) A defendant's negligence must be found to be a cause in fact of the plaintiff's injury before it can be found to be a proximate cause of his injuries. *Id*. Factual cause is generally a question of fact, but if there is no issue of material fact, the court may decide the question. *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009).

To establish proximate cause, a plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and any intervening causes were foreseeable. *Moning*, 400 Mich at 439. There can be more than one proximate cause, *O'Neal*, 487 Mich at 496-497, and a tortfeasor is liable for injuries exacerbated by a physical condition of the plaintiff, *Wilkinson v Lee*, 463 Mich 388, 396-397; 617 NW2d 305 (2000). Proximate cause is usually a question of fact for the trier of fact, but if the facts bearing on proximate cause are undisputed and reasonable minds could not differ, the issue is one of law for the court. *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 393; 808 NW2d 240 (2010).

Here, plaintiff pleaded the elements necessary to establish an ordinary negligence claim.[6] Plaintiff alleged that defendant owed Niehaus "a duty to use reasonable care and to not injure him." See *Jahnk v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014) ("[T]he duty owed in a general negligence claim is that every person who engages in the performance of an undertaking has an obligation to use due care or to act so as not to unreasonably endanger the person or property of another.) (Quotation marks and citation omitted). Plaintiff specifically alleged that defendant negligently exposed Niehaus's feet to scalding water, failed to inspect and decrease the water's temperature, failed to use a thermometer to gauge the water's temperature, and failed to train and supervise employees to ensure they did not give scalding hot footbaths. Plaintiff also alleged that, as a "direct and proximate result" of defendant's negligence, Niehaus suffered the serious injuries and damages specified in the complaint. Thus, plaintiff pleaded duty, breach, causation, and damages as they arose from defendant's alleged negligent conduct.

Defendant contends that water in a pedicure basin is an activity, condition, or instrumentality on the land of a nail salon, and that plaintiff's claim of ordinary negligence is

---

[6] Plaintiff does not challenge the trial court's dismissal of its allegations of gross negligence.

merely an attempt to plead in avoidance of the open and obvious danger doctrine that is applicable to premises liability claims but not to ordinary negligence claims. See *Laier*, 266 Mich App at 494.

For support of its position, defendant relies primarily on *Valinski* and *Eason v Coggins Memorial Christian Methodist Episcopal Church*, 210 Mich App 261; 532 NW2d 882 (1995). In *Valinski*, Keith Valinski grabbed the handle of a hot skillet of fajitas served to his table at the defendant restaurant, causing him to suffer burns and blisters to part of his right hand, which a prior electrical explosion at his place of employment had left numb. Valinski and his wife brought a negligence claim, which the trial court dismissed under the open and obvious danger doctrine. *Valinski*, unpub op at 1. On appeal, the plaintiffs argued that the open and obvious danger doctrine did not apply because "this case does not involve a condition on the land or a product." *Id*. at 2. As already indicated, this Court disagreed, reasoning as follows:

> Serving food items on a hot skillet could be considered an activity or condition on the land. In *Klimek v Drzewiecki*, 135 Mich App 115, 119; 352 NW2d 361 (1984), we held that a loose dog is a "condition on the land." Furthermore, a skillet could be considered a form of a product. In *Resteiner v Sturm, Ruger & Co, Inc*, 223 Mich App 374, 380; 566 NW2d 53 (1997) (White, P.J., concurring in part and dissenting in part, Griffin and Kolenda, JJ., concurring), we applied the open and obvious doctrine to a revolver as a product. See also *Glittenberg* [*v Doughboy Recreational Indus, Inc (On Rehearing)*, 441 Mich 379, 392; 491 NW2d 208 (1992)] (products liability case). In *Eason v Coggins Memorial Christian Methodist Episcopal Church*, 210 Mich App 261, 264; 532 NW2d 882 (1995), we applied the open and obvious doctrine to a ladder as an instrumentality in a premises liability case. Because a hot skillet can constitute an activity, condition on land, or a product to which we have applied the open and obvious doctrine, the skillet in this case is within the scope of the doctrine. [*Id*. at 2-3.]

Accordingly, the Court affirmed that the skillet fell under the scope of the open and obvious doctrine. *Id*. at 3. Defendant admits that *Valinski* is unpublished and, therefore, while it could be instructive or persuasive, it is not binding. MCR 7.215(C)(1); *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). Nevertheless, defendant claims that the published cases upon which *Valinski* relies support the trial court's determination that the pedicure footbath in the instant case is an activity or condition on the land.

Defendant points specifically to *Eason*, which involved a plaintiff who suffered fatal injuries after falling from a ladder and scaffolding that the defendant's agents set up to facilitate repair and maintenance of defendant's building. *Eason*, 210 Mich App at 262. The plaintiff specifically argued that the ladder was missing a safety latch or that the latch was malfunctioning. *Id* at 263, 265. The trial court granted the defendant's motion for summary disposition under MCR 2.116(C)(8) pursuant to the open and obvious doctrine. *Id*. at 263. This Court analyzed the case as a premises liability claim, as that was the plaintiff's theory, and held that the care owed by a premises owner "extends to the instrumentalities on the premises that the invitee uses at the invitation of the premises owner." *Id*. at 264. Ultimately, this Court reversed

the trial court's grant of summary disposition to defendant due to remaining questions of fact. *Id*. at 266.

In our view, the instant case is distinguishable from both *Valinski* and *Eason*. The sizzling fajitas menu item in *Valinski* was primarily a good (or, as the *Valinski* Court observed, a type of product), presumably prepared and served each time to achieve the "sizzling" effect by means of a hot skillet; without a sizzling skillet, one did not have sizzling fajitas. By contrast, the pedicure in this case was primarily a personal service. Although technicians used water to provide the service, monitoring and adjusting the temperature of the water in the footbath was part of the service, and it is this component of the service that plaintiff alleges Tran negligently performed. In addition, unlike skillets that must be sizzling if one is properly to serve sizzling fajitas, the temperature of the water in the pedicure basin varies according to each customer's preference, and is never meant to be scalding hot. Properly adjusting the temperature of the water is part of the service that each technician provides, and it is this aspect of the pedicure service that plaintiff alleges defendant negligently performed.

The instant case is also distinguishable from *Eason*. Unlike the plaintiff's allegation of a defective ladder in *Eason*, the instant plaintiff does not allege that the water delivery system was defective; rather, it was the service of the technician in preparing the water for use that plaintiff alleges was defective. Thus, the service aspect of a pedicure distinguishes it from an activity, condition, or instrumentality *on the land*.[7]

To support her position that this case sounds in ordinary negligence, plaintiff relies on the dissent's reasoning in *Kwiatkowski v Coachlight Estates of Blissfield, Inc*, unpublished opinion per curiam of the Court of Appeals, issued July 3, 2007 (Docket No. 272106). *Kwiatkowski* was a 2 to 1 decision that, in lieu of granting leave to appeal, the Supreme Court reversed for the reasons stated in the dissent. *Kwiatkowski v Coachlight Estates of Blissfield, Inc*, 480 Mich 1062; 743 NW2d 917 (2008).

The plaintiff in *Kwiatkowski* sued after the manager of the mobile home parked owned by the defendant opened a screen door into him, causing him to fall off a narrow porch and suffer injury. *Kwiatkowski*, unpub op at 1. Plaintiff filed a claim based on premises liability and breach of statutory duties. *Id*. The trial court granted the defendant's summary disposition motion, but allowed the plaintiff to amend the complaint to allege general negligence, and then denied the defendant's summary disposition motion on the amended complaint. *Id*. This Court reversed the trial court, concluding that the plaintiff had failed to make out a prima facie case of negligence. The Court reasoned that plaintiff had failed to show that merely opening a screen door gave rise to a common-law duty of care, that the harm plaintiff suffered was foreseeable,

---

[7] For example, no one would argue that a waiter's negligent spilling of hot coffee in a patron's lap is a premises liability claim; rather, it is clear that such conduct sounds only in ordinary negligence. See *Laier,* 266 Mich App at 493 ("In a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land. However, that does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct . . . .").

and that there was an appreciable degree of certainty that the defendant's conduct would produce injury; it further concluded that the connection between the defendant's conduct and the plaintiff's injuries was too tenuous. *Id*. at 2-3. The Court also reasoned that, even if opening the screen door gave rise to a common-law duty, no evidence indicated that the defendant had failed to use due care in opening the door. *Id*. at 3. The Court called into question the plaintiff's classification of his claim as negligence rather than premises liability, opining:

> . . . plaintiff was not injured by the door hitting his face and chest. Rather, plaintiff was injured by his fall once he lost his balance on the small porch and when his foot caught under the door. The small porch and the slight gap between the porch and the door are conditions of the land. Thus, plaintiff's claim arguably sounds in premises liability, not general negligence. [*Id*.]

The dissent agreed with the trial court that, under common law, the defendant owed a duty not to slam a door into someone. *Kwiatkowski*, unpub dissent at 1. Because the door was not opaque and the manager could have looked through it before opening it suddenly, but did not, the record was sufficient to establish a genuine issue of material fact regarding whether the manager's conduct breached this duty. *Id*. at 2. The dissent noted, "the inability to foresee the *precise manner* in which plaintiff's injury occurred is not fatal to plaintiff's ordinary negligence claim." *Id*. at 2, citing *Hiner v Mojica*, 271 Mich App 604, 615; 722 NW2d 914 (2006), lv den 477 Mich 1124 (2007). The dissent further noted, "[a] plaintiff need not establish that the mechanism of injury was foreseeable or anticipate in specific detail. It is only necessary that the evidence establishes that some injury to the plaintiff was foreseeable or to be anticipated." *Kwiatkowski*, unpub dissent, p 2, quoting *Schultz v Consumer Power Co*, 443 Mich 455, 452-453 n 7; 506 NW2d 175 (1993). Finally, the dissent opined that the case did not sound in premises liability because the plaintiff based his claim on the defendant's alleged conduct in opening the door, not on the defendant's failure to protect him from some dangerous condition on the land. *Kwiatkowski*, unpub dissent, p 2. In lieu of granting leave to appeal, Michigan's Supreme Court reversed the judgment of this Court and reinstated the judgment of the trial court denying dismissal of the plaintiff's negligence claim for the reasons stated in the dissent. *Kwiatkowski*, 480 Mich at 1062.

We conclude that the instant case more closely resembles *Kwiatkowski* than *Valinski*. Plaintiff based her allegations in Count I on defendant's alleged conduct in drawing the pedicure footbath, not in a faulty water heater, pedicure basin, or pedicure chair, or in a water heater set at a temperature that was too high. In *Kwiatkowski*, while there were conditions on the land that may have been relevant to the plaintiff's injury, the plaintiff alleged that his injuries arose from the manager's negligent opening of the door. Likewise, here, even if the water heater delivered scalding hot water that could be mixed with the cold water, plaintiff alleges that Niehaus's burns arose from Tran's failure to create a safe temperature mix and to check the water before instructing Niehaus to put his feet in the scalding hot water. Based on the foregoing, we conclude that Tran's allegedly negligent act of filling the footbath with scalding water is not a condition, instrumentality, or activity on the land, and that plaintiff's claim sounds in ordinary negligence.

Defendant asserts that even if plaintiff's claim sounds in ordinary negligence, plaintiff cannot establish causation because the sole cause in fact of Niehaus's injuries was his

undisclosed diabetic neuropathy, and because his injuries were not foreseeable, given that the average person would have immediately removed his or her feet from water in excess of 120 degrees. Defendant further asserts that Tran fulfilled defendant's duty of reasonable care by asking Niehaus if the water temperature was acceptable and that she could not reasonably have foreseen or anticipated that he would fail to disclose that, because of his medical condition, he could not detect the water's temperature. Niehaus had a duty to exercise reasonable care for his own safety and protection. *Laier*, 266 Mich App at 496. Given this duty, defendant argues, it "should not be legally charged with foreseeing both that the decedent had no feeling in his feet and that he would not protect himself from the possibility that the water might be too hot."

Defendant's analysis overlooks that there may be more than one cause in fact, see *Craig*, 471 Mich at 87, and more than one proximate cause, *O'Neal*, 487 Mich at 496-497. Whether defendant's alleged actions and omissions were a cause in fact of Niehaus's injuries is a question of fact. Plaintiff alleged that Tran turned the water on to begin filling the basin, checked the water until it turned from cold to warm, and then finished filling the basin and exposed Niehaus's feet to the scalding hot water without first checking the temperature of the filled basin. Niehaus's medical records indicate that he had second-degree burns as well as a third-degree burn on his feet, and plaintiff's scalding expert testified that Niehaus's burns were consistent with a footbath of at least 120 degrees. Viewed in the light most favorable to plaintiff, these allegations could "support a reasonable inference of a logical sequence of cause and effect." *Craig*, 471 Mich at 87 (quotation marks and citation omitted).

Defendant also errs in its proximate cause analysis by assuming that the principle that a tortfeasor is liable for injuries made worse by a physical condition of the plaintiff does not apply to causation. In *Wilkinson*, 463 Mich 388 (2000), our Supreme Court relied upon this principle to reverse this Court's prior ruling in *Wilkinson v Lee*, unpublished opinion per curiam of the Court of Appeals, issued June 15, 1999 (Docket No. 203218). The relevant issue in *Wilkinson* was whether an automobile accident that the defendants admitted causing was the proximate (factual and legal) cause of the plaintiff-husband's injuries. *Wilkinson*, unpub op at 1. Shortly after the accident, the plaintiff-husband began experiencing changes in his physical and mental condition that doctors eventually determined were symptoms of a meningioma brain tumor. The plaintiff's physician testified that it was " 'quite likely' " that the plaintiff had the tumor at the time of the automobile accident, and that the head trauma from the accident "could have precipitated or accelerated the symptoms of the tumor" that the plaintiff was experiencing. *Id*. at 2. The defendants' medical expert testified "that there was no medical evidence to support the theory that trauma from an accident could cause the growth or acceleration of a tumor." *Id*. The case went to the jury, which returned a verdict for the plaintiffs. Subsequently, the defendants moved unsuccessfully for a directed verdict or a judgment notwithstanding the verdict (JNOV). *Id*.

On appeal, the defendants argued that the trial court erred in denying their motion for a directed verdict or a JNOV. In a 2 to 1 decision, this Court concluded that the plaintiff's claim could "survive neither the test of cause in fact nor the test of legal cause[,]" and, thus, agreed with the defendants that the trial court erred in denying their motion. *Id*. at 4. The Court determined that, although the accident may have precipitated the symptoms of the tumor, it did not cause the tumor and, therefore, it could not be said that, but for the accident, the plaintiff would not have had the brain tumor. *Id*. at 5. The Court further determined that, "even when

construing all the evidence in a light most favorably to plaintiffs," the defendants could not reasonably have foreseen that the accident at issue "would precipitate or trigger [the plaintiff's] symptoms, the basic cause of which was the as yet undiagnosed brain tumor." *Id*. The Court concluded, "there was no showing that the nexus that may have existed between the 1992 accident and [the plaintiff's] symptoms was of such a nature that it is socially and economically desirable to hold defendants liable." *Id*. Therefore, this Court reversed the trial court's judgment and remanded the matter for entry of a JNOV in favor of defendants.

In reversing this Court's judgment, the Supreme Court quoted with approval the dissent's observation that,

> [P]laintiff is a classic example of the victim with the egg-shell skull and the axiom that one must take a plaintiff as one finds him. Shall we decline to impose negligence on one who knocks down and breaks the bones of a little old lady who suffers from osteoporosis simply because the inattentive or careless oaf didn't cause her underlying condition? Of course not. [*Wilkinson*, 463 Mich at 393.]

The *Wilkinson* Court further explained, "[r]egardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition[,]" and determined that the medical evidence presented at trial would have allowed a jury to find that the automobile accident caused by the defendant's negligence was a cause in fact of the plaintiff's injuries. *Id*. at 395. Regarding legal cause, the *Wilkinson* Court observed:

> Established principles require that the defendants take the plaintiff as he was, with his susceptibility to injury resulting from his brain tumor. 2 Restatement, 2d, Torts, § 461, p. 502, contains a classic statement of that principle:
>
>> The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.
>
> As the comment to § 461 states:
>
>> The rule stated in this Section applies not only where the peculiar physical condition which makes the other's injuries greater than the actor expected is not known to him, but also where the actor could not have discovered it by the exercise of reasonable care, or, indeed even where it is unknown to the person suffering it or to anyone else until after the harm is sustained. A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act is negligent.

* * *

This case is a clear one for the application of that principle. The plaintiff's preexisting brain tumor made him more vulnerable to adverse consequences from head trauma than the average person. However, it was certainly foreseeable that a result of the driver's negligence in causing an auto accident could be physical injury, including head trauma, to an occupant of the other vehicle. The fact that this particular plaintiff was unusually vulnerable to head injuries does not relieve the defendants of responsibility for those damages. [*Wilkinson*, 463 Mich at 396-397 (citations omitted).]

In light of *Wilkinson*, it is certainly foreseeable that drawing a footbath filled with scalding water[8] and instructing a customer to put his feet in it creates a risk of physical harm to the customer. Plaintiff's diabetic neuropathy made him more vulnerable to serious burns from scalding water than the average person. Defendant is subject to liability for plaintiff's second- and third-degree burns, even though defendant did not know about plaintiff's vulnerable condition and even though the burns were more serious than defendant should have foreseen as a probable result of its conduct of having a customer place his feet in scalding water. *Id*. at 396-397.

Viewing the evidence in the light most favorable to plaintiff, *Quinto*, 451 Mich at 362, we conclude that plaintiff has stated a valid claim for ordinary negligence. Plaintiff alleged that defendant had a duty to exercise reasonable care in providing pedicure services to Niehaus. Conflicting deposition testimony about the temperature of the water creates a genuine issue of material fact with regard to whether defendant breached its duty. If defendant did breach its duty, a trier of fact could find that such breach was an actual and legal cause of Niehaus's burns, i.e., a type of harm logically related to, and foreseeable in light of, defendant's negligence. If a jury finds defendant negligent, it can then consider whether Niehaus was comparatively negligent for allegedly failing to inform defendant of his diabetic neuropathy. MCL 600.2959.

## C. OPEN AND OBVIOUS DANGER DOCTRINE

Plaintiff next contends that the trial court erred in dismissing her premises liability claim because scalding water in a pedicure basin is not a danger that an average user would find open and obvious upon casual inspection. We affirm the trial court's dismissal of plaintiff's premises liability claim (Count II), but on grounds other than application of the open and obvious danger doctrine. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998). ("When this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning.").

As indicated above, "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Jahnke*, 308 Mich App at 474

---

[8] Water is considered scalding when it is at 120 degrees Fahrenheit or higher. www.accuratebuilding.com/services/legal/charts/hot_water_burn_scalding_graph.html.

(quotation marks and citation omitted). A premises liability claim arises from a condition on the land, whereas a claim of ordinary negligence arises from a defendant's conduct. See *James*, 464 Mich at 18-19. In both cases, the plaintiff must prove (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages. See *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012). In a premises liability case, the measure of the land possessor's duty depends on the status of the plaintiff as trespasser, licensee, or invitee. *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). In the instant case, there is no dispute that Niehaus, as a customer of defendant's nail salon, was a business invitee. "A business invitee, is one who enters a premises to conduct business that concerns the premises owner at the owner's express or implied invitation." *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 91 n 4; 485 NW2d 676 (1992). Where the "plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions." *Id.* at 96.

With regard to defendant's liability as a premises owner, plaintiff alleges that defendant failed to monitor the temperature of the water heater's setting and of the water in the footbath, to establish procedures for monitoring the water temperature, and to alert Niehaus of the unreasonable risks of harm due to scalding footbaths defendant knew or should have known about. However, plaintiff has failed to allege—let alone demonstrate—that the water heater was set at an inappropriately high temperature, that it was defective in any way, or that there was a defect in the pedicure chair or footbath that resulted in the delivery of water that was too hot for a customer's skin into the footbath basin.[9] In other words, plaintiff merely speculates that the water delivery system constituted a dangerous condition on the premises for which defendant should be held liable because it knew or should have known about the condition and failed to fix it, guard against it, or warn Niehaus about it. *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 878 (2012). Ballanco suggested in his deposition that defendant's alleged failure to install anti-scalding devices violated Michigan's Plumbing Code, but his testimony did not establish that such devices were required for nail salons or their pedicure footbaths. Ballanco opined that pedicure footbaths fell into the same category of bathtubs, for which the Code did require "water-temperature limiting devices," but admitted that such categorization was a matter of interpretation.

The gravamen of plaintiff's complaint revolves around the alleged negligent conduct of Tran and the implication that, had Tran acted with due care, even if scalding water had been

---

[9] See *Viramontez v Southwest Counseling Solutions*, unpublished opinion per curiam of the Court of Appeals, issued September 15, 2015 (Docket Nos. 320380, 320602). In *Viramontez*, the plaintiff suffered burns from hot water while taking a shower and argued that the defendant was liable under theories of statutory negligence and premises liability. This Court affirmed the trial court's summary dismissal of the plaintiff's premises liability claim in part because the plaintiff failed to demonstrate a defect in the water system due to unsafe temperature. Although unpublished opinions are not binding precedent, this Court may consider them as instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

delivered to Niehaus's pedicure basin, she would have checked the water and adjusted its temperature before instructing Niehaus to put his feet in it. *Jahnke*, 308 Mich App at 474 ("[T]he gravamen of an action is determined by reading the complaint as a whole, and by looking beyond the mere procedural labels to determine the exact nature of the claim.") (Quotation marks and citation omitted). The trial court dismissed plaintiff's claim because it considered the water in the pedicure basin analogous to the hot skillet in *Valinski*, making no mention of any alleged deficiencies in the water delivery system. Moreover, at the hearing on defendant's motion for summary disposition, defendant observed that plaintiff set forth the same allegations in its negligence claim as in its premises liability claim, and concluded therefrom that this case sounded in premises liability because none of the negligence claims arose independently from a condition on the land, i.e., hot water. Although agreeing with defendant's observation about the similarity between the allegations in the two counts of plaintiff's complaint, we draw the opposite conclusion, i.e., that plaintiff has stated a claim of ordinary negligence, but not a claim of premises liability. Although a party can bring claims for both premises liability and ordinary negligence if the facts support each claim, *Laier,* 266 Mich App at 493, under the facts alleged in this case, the pouring of scalding water into a footbath basin during a pedicure did not implicate defendant's duty as an owner, possessor, or occupier of land. Thus, because plaintiff has failed to state a claim for premises liability, we affirm the trial court's grant of summary disposition to defendant on Count II of plaintiff's complaint.

## III. CONCLUSION

We conclude that, viewing the evidence in the light most favorable to plaintiff, *Quinto*, 451 Mich at 362, plaintiff has stated a valid claim of ordinary negligence, but failed to state a claim for premises liability. Therefore, we affirm the trial court's order as to plaintiff's premises liability claim, reverse the trial court's order granting summary disposition to defendant as to plaintiff's ordinary negligence claim, and remand the matter for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

-14-